Number 171052 and number 171052 U.S. v. Laureano-Salgado and number 171053 U.S. v. Pedro Luis Ramirez-Rivera. Good morning. May it please the Court, Attorney Irma Valladolid on behalf of Appellant Pedro Ramirez-Rivera. I will request to reserve one minute for rebuttal. Yes. I will address the Brady issue in this case. I begin by calling the attention of the Court to the concession by the government, by the government in its brief, that it has a continuous duty to, at every stage, to disclose to the defendant all exculpatory information that comes to its attention at every stage of the judicial process, including when a case is pending on direct appeal following a conviction. That's a Brady request. I also want to call the attention to the Court that two of the honorable judges that are appearing in this panel today, this case, decided the direct appeal from Appellant's conviction for the murder of Pequeque, and found that the government case against him, Ramirez-Rivera, heavily relied on the testimonial evidence from three cooperating witnesses, members of the government. Imagine now for a second that while the direct appeal was being argued right here in this court before these honorable judges back in 2015, the government would have disclosed that they have, after trial, found two cooperating witnesses, members of the rival gang Rompe ONU, that claimed Pequeque was murdered by his own cohorts, the members of the Rompe ONU. And what if, in addition, the government would have disclosed that they have already used these other testimonies before the grand jury to indict the members of the rival gang? In Giglio's case, the defense discovered the impeaching evidence while the case was being reviewed on direct appeal. The trial United States attorney was unaware of lenient promises given to the witness by other U.S. attorneys of the office while the case was on trial. The promises were discovered by the defense while the case was on appeal, like this what happened. The Supreme Court held that it would constitute a brevity violation when the government, although not soliciting false evidence during the trial because it was unknown to the prosecutor at trial, allows it to go uncorrected when it appears. It happened in this case while this case was on appeal. Indeed, the government's failure to disclose the testimony of January and Calvino while this case was being argued before this honorable court on direct appeal constitute a brevity violation. And this brevity violation will overturn the conviction of Ramirez Rivera if there is a reasonable probability that had the evidence been disclosed to the defense in a timely manner, that is, while this case was on appeal, on direct appeal, the result of the proceeding would have been different. And I pose that at that moment if we would have, the defense would have known that assisted those other two witnesses who put the blame on the rival gun for the murder of Pequeque, the defense would have asked for a reversal of the conviction, vacation of the conviction, and remand the case for a new trial where they would have the opportunity to present these new witnesses. None of the cases cited by the district court and the government involve government withholding evidence while the case was on direct appeal. The Supreme Court has held that appellate review is an integral part of the trial system for finally adjudicating the guilt or innocence of a defense. That's why I insist and the defense insists that it's the brevity test with which we have to use to measure the evidence that was withhold from the government and discovered afterwards. None of the cases relied by the district court, the Osborne case, and by the government, the Herbert case, involve evidence, follow-up evidence discovered while the case was on direct appeal. That means that if this case is being reviewed by this honorable court and the government comes into knowledge of follow-up evidence to the defense of the type involved in this case, that is per your testimony, the case should have been revoked, reversed, and directed back to the district court for appeal. Counsel, I don't have any questions at this particular time. Judge Barron, do you have any questions? No, I think I'm okay. Thank you. Good morning. Carlos Sanchez on behalf of Jose Laureano Salgado. May I reserve two minutes for rebuttal? Yes. Thank you. Your Honor, the newly discovered evidence is both material and it's powerful, exculpatory information, evidence that will result in an acquittal on a retrial of Mr. Salgado. And to address the material issue, the government and Judge Smith initially stated that it was not material because we were dealing with inadmissible hearsay. But I submit to your court that the transcript of February 13, 2007, which is a docket entry number 2076, prevents actually the government from making their argument and shows that the district court reconsidered its decision. Why? Because in that transcript, Janjore Pizarro was sitting as a witness and the judge held that he was competent to testify. In fact, to cite the end of pages 14 and 15, the judge explicitly held that Janjore Pizarro's testimony was relevant and was admissible under the co-conspirator exception. And, Your Honor, the government did not object. In fact, the government specifically stated, we don't have an objection as to the co-conspirator or relevance. So, Your Honor, the government, by that admission, cannot claim before this court that the testimony of Janjore Pizarro is inadmissible. And, Your Honor, the district court actually went even farther in that hearing. It held clearly that Janjore Pizarro could even express opinions, Your Honor. And that is pretty significant because just returning to when Janjore Pizarro is a witness, if he's sitting in the witness trial, Your Honor, Judge Smith used the exact term that is important for this court to consider. It's a completely open field once he's a witness. And why is that important, Your Honor? Because the evidence that Janjore Pizarro has to offer is exculpatory, Your Honor. As Judge Barron and Judge Thompson can remember, in the trial, the original trial of Mr. Laureano, the defense offered no alternative theory to factual theory to the murder of Pequeque. They simply attacked the credibility of the government's co-operator. With this Janjore Pizarro evidence, now I will submit they can offer two alternative theories for the murder based on admissible statements by Janjore Pizarro. And the two theories are they can tell the jury Janjore Pizarro was killed, I'm sorry, Pequeque was killed in an internal war of La Rompeono as both Janjore Pizarro testified and Calvino Acevedo testified. But there's more, Your Honor. There's more. But is that inconsistent with the government's theory that he was, there were others after him too? And they ended up using the same assassin? It is inconsistent with... So, tell me how. It's completely inconsistent because what the government did in the La ONU trial is they presented evidence through the three witnesses, co-operator witnesses, that Pequeque was killed by orders from the leaders of La ONU. And they implicate Laureano Salgado in being ordered to turn over a car and allegedly driving to the scene of where Pequeque was murdered. Whereas when the government presents its case against La Rompeono, and I don't think they can do this, they're actually getting up and telling the jury by presenting other Janjore Pizarro, Calvino Acevedo, that Pequeque was killed by members of La Rompeono in an internal war. Your Honor, and if you look at what Janjore Pizarro tells the agents in his statements, and these are all determinations I would submit to the court that the jury has to make. I mean, the prosecutor has a lot of power, but the prosecutor has no power to determine the facts. And that is the exact point here. It was the jury who was entitled to hear the alternative factual theories for the murder of Pequeque, which they never heard, Your Honor, because that evidence is newly discovered evidence. And not only can, through Janjore Pizarro, you can show that Pequeque may have been killed in an internal war, you can even show that Pequeque may have been killed in a revenge for participating, for providing the weapons and the car to kill another gang leader from the Luis Joren Torres public housing project. And these are all statements that Janjore Pizarro made, that statement that Pequeque told him that he had provided the weapons and the cars to kill the leader of the Luis Joren Torres forced street gang by an nickname of Chacal, it's actually referred to in the report as Chaca, but it's really Chacal. All of that, Your Honor, that comes in through 84B3. That's admissible hearsay. And so the jury now is going to have not one, they're going to have two factual theories for the murder of Pequeque. The government is going to say it was done by the owner, but the defense can show that no, there was an internal war. So it was probably as a result of that internal war that he was killed. And they can also say, no, this is a revenge killing because Pequeque was involved in the murder of Chacal. And it so happens, and you can tie all of this, Your Honor, as we mentioned in our briefs, you can tie all this through Janjore Pizarro. Because he testified that when he arrives at the murder scene where Pequeque has been killed, he finds out that Pippin, who was from Alturas de Cubay gang, had been talking to Pequeque. And that raises all sorts of inferences that you can make to a jury, Your Honor. Can I just make sure I understand one thing? The testimony of the cooperators that the government relied on in the trial that led to this conviction directly implicated the defendant in the killing, correct? Your Honor, it was through circumstantial evidence. There was no eyewitness testimony. No, I'm saying the testimony of the cooperator, their testimony directly implicated the defendant in the killing, right? Yes, that's right. Now, subsequent to that, two of those cooperators then testified in a different case. In the testimony in that separate case, they didn't recant their prior testimony that implicated the defendant in the killing. In fact, if I understand it, in that separate case, didn't they restate their position that the defendant had been involved in the killing? Your Honor, I'm not familiar with the other case because my client was not involved. What I'm saying is, your point is that the new evidence is that these cooperators who implicated your client in this killing subsequently gave testimony to undermine that earlier testimony. No, Your Honor, if I interrupted you. The three cooperator witnesses for the government in the ONU case are not the same two cooperator witnesses for the government in the Rompe ONU trial. There are two sets of cooperator witnesses that are different, if that answers the question. So, in other words, in the ONU, you had three cooperator witnesses that said Pequega was killed by orders of the ONU. And in the Rompe ONU, you had two different cooperator witnesses who were members of the Rompe ONU, including Janjo Pizarro, who said that the killing was done in an internal war. But what I guess I'm getting, the new testimony that you say gives you the right to the new trial, is this testimony by these cooperators in this separate case, correct? Correct. Does that testimony say that, I know it says that there was an internal war, but in that testimony, do they also say that your client was not implicated in the killing? They were never asked, Your Honor. They were never asked. I'm just asking, they do not say that your client was not involved in it? By implication, they are actually rejecting the previous testimony because they're saying Pequega was killed in the Rompe ONU internal war, Your Honor. So they're not implicated in the ONU. Any further questions, Judge Barron, at this time? No. All right. Thank you, Counsel. You've reserved some time. Good morning again. Victor Acevedo on behalf of the United States. May it please the Court. I'd like to start out with Judge Barron's last question. If you go and look at Luis Jan Joret's testimony before the fourth LAONU trial, because there were four LAONU trials in this case, he specifically stated, let me be clear, and I'm trying to quote as best that I can. There's no doubt that LAONU was involved. He said, I'm not quoting directly, but he said, let me be clear, there is no doubt LAONU was involved in the murder of Pequega. So everything they're characterizing as this great evidence that they're going to use, the cooperator who they're intending to use said under oath in the trial of Maestro Ramos that LAONU was involved. Now, if you look at what they're arguing, they're arguing that Brady happened here. Brady applies to pre-trial proceedings. The United States did not suppress any evidence before trial. This evidence came about after trial. And that is why the proper standard to analyze this is right, where they have to show that there was an actual probability of an acquittal and that the evidence was material. Ramirez in his brief doesn't even... Can you just tell me, just so I don't get lost on something about this point. Yes. It's more about Brady than the standard is actual rather than probable. And with respect to whether it would actually affect guilt, just so I understand your argument. The new evidence that wasn't disclosed is testimony by the cooperators that says there was an internal war between Larampe and Uno. So that would suggest Larampe may have been somewhat implicated in it. But your contention is that the record will show that those cooperators also said LAONU was involved. My contention is that the main cooperator who they're relying on, whose name is Luis Jean Jore Pizarro, who is a member of LaRampeONU, he stated under oath that LAONU was involved. Did he say anything about whether the defendant in the case that is before us on appeal was implicated in the murder or not? He did not, your honor, because he also, and the appellants know this, has no personal knowledge of the murder because he wasn't even there. Okay, so your contention is that his testimony, even if it might provide some basis for a defense theory that would undermine the prior cooperator testimony that implicated the defendant in this case, it couldn't possibly be enough to create evidence of actual, to meet the actual standard if Brady doesn't apply. Yes, that's correct, because the evidence would still be that the defendant appellants participated in their murder, motivated by their affiliation to LAONU. And there's the evidence that they would have used, would have not denied that, would have actually corroborated that evidence. And in fact, Luis Jan Jore Pizarro also would have been able to testify that the shooter in this case was a person by the name of Joshua, who was the same shooter that the cooperating witnesses in LAONU trial identified as being the person involved in that murder. So Luis Jan Jore would have corroborated our cooperating witnesses in LAONU trial in the most important facts, that LAONU was involved and that Joshua was the shooter. That is why in the trial of Ismael Cruz Ramos, who is a fellow member of LAONU, who his case was returned to the district level after he succeeded in a suppression claim on appeal, he decided not to use any of these cooperating witnesses, knowing that he could, because he knew they were unfavorable. Now, if you look at the testimony that these cooperating witnesses from LAROMPEONU would have been able to provide, which is that those statements would not be material because they are not admissible. They are either an opinion based on hearsay or hearsay. And first, the co-conspirator exception is not applicable, because the co-conspirator exception requires that the co-conspirator, who is the declarant, be part of the same conspiracy as the defendant. And in this case, you have separate conspiracies. You have LAROMPEONU and LAONU, so they can't use the co-conspirator statement. They can't also use the statement against interest exception, because what Jan Joret is saying is he's relaying statements made by other persons. And when you look at those statements, none of them are against interest. And one of the statements, some of the statements are even by his cousin, who's not even a member of LAONU or LAROMPEONU. The other exception, the other way they could have tried to get in is through lay witness opinion, but again, this wouldn't be a proper mechanism either, because you can't test, you can't base your opinion, your lay witness opinion on statements, on hearsay statements that would be inadmissible. So that is why we submit that both Laureano and Ramirez have not carried their burden on the right. They haven't been able to show that it is material, and they cannot show, as previously argued, that it would actually, an actual probability that it would result in an acquittal, because as I mentioned, the co-operator that they would have intended to use would have actually corroborated the testimony of the co-operating witnesses. I just want to pursue the statement against interest point just a little bit further. So he makes a statement that is hearsay, but in admitting that he heard this information, is he not implicating himself in a criminal combination? No, Your Honor, because those statements, they would have to show totem pole hearsay. They would have to show hearsay. I'm not on the hearsay point. I'm just on what it is, the statement that he made, which is I heard X. By making that statement, is he not implicating himself as a person who was in a position to have heard that? So I'm trying to understand why his statement, even if it includes hearsay, is not a statement against interest. It doesn't get them past the hearsay problem, but you say it's not a statement against interest at all. No, because just merely hearing someone else say something doesn't implicate you necessarily in a conspiracy, because what he would have said is Pippin, for example, I think is one of the ones that they bring. Pippin told me that, look out that they don't kill you as they killed Pequeque. So that would mean that anyone who hears an incriminating statement by someone else, then that would be a statement against interest. No, it's when he then restates that, that he heard that. It's the actual statement that he's making. But he would, yes. Is that not a statement against interest? No, because I would understand that to be a statement against interest, it would have to be at the time it is happening, because if not... The first statement, that's where you stop. Yes. Does the court have any additional questions for me to answer? Judge Barron?  All right, thank you. Thank you, Your Honor. Thank you. Attorney Robert Valdellulli, on behalf of Ramirez Rivera, I want to point out only one thing to the court in answer to the government's argument. Is that at the time, I'm taking that Brady responsibility and obligation of the government goes up to the time when the case is on direct appeal. Before the conviction is final, because of either the defendant did not appeal or the conviction was affirmed. And while this case was on direct appeal, being argued before this court, the government already had Gianlori testifying before the grand jury. And they had, where he did not say at least the testimony that we have, the transcript from the grand jury, he did not say that at that time that the owner was also involved in the murder of Pequeque. He only referred that the one who were involved was because of internal war between the members of Pequeque. And that's the evidence, and that moment that the government had the obligation to disclose that to the defense and to the court at that time. Thank you. Judge Barron? Oh, I'm fine. Thank you. Carlos Sanchez for Mr. Laureano. The government fails to address the transcript where they admitted that the evidence was both, the evidence presented by Gianlori Pizarro was both relevant and a co-constituted, a co-conspirator statement, Your Honor. And, Your Honor, the government in U.S. versus Qatar, 840 F. 2nd, 118, this court stated the government cannot indicate to one federal court that some statements, certain statements are trustworthy and accurate, and then argue to a jury in another federal court that they're hearsay. So, Your Honor, again, we believe that even disregarding the transcript, that statements come in under the penal interest, the statement of interest, that's all argued in our brief. But, Your Honor, there's a judicial admission on this case. At docket entry 2776, the government admitted that the testimony that had been presented by Gianlori Pizarro about what he knew about the murder of Pequeque was relevant and that it was admissible as a co-conspirator statement, Your Honor. And, Your Honor, let me be, get a little bit fact specific because I think it's important not to lose sight that these, whatever Gianlori Pizarro's going to be saying, it's not for, respectfully, for this court to determine it. The credibility of Gianlori Pizarro has to be determined by the jury. The weight of the evidence has to be determined by the jury. And Gianlori Pizarro is consistent in his grand jury testimony in 2015 and in his trial testimony that it was La ONU, La Rompe ONU, who killed. In fact, in the hearing in 2017 where the government made those judicial admissions, Gianlori Pizarro stated that he believed that Mr., that Pequeque had been killed in an internal war. And he stated that he wanted to kill, may I finish? Wanted to kill Pequeque, but he did not have the order to kill him, Your Honor. So, over to you, Mike. Counsel, you cited the U.S. v. George Cater case. Could you just give me that cite one more time? I'm sorry. It's U.S. v. Qatar, Your Honor. Oh, I know George Cater. It's Cater. Cater, I'm sorry. 840 F. Second at 118. Thank you. Thank you all. Thank you.